19859. TOMBERLIN *v.* WAYCROSS COMMERCIAL HOTEL COMPANY INC.

DECIDED FEBRUARY 3, 1930.  REHEARING DENIED FEBRUARY 18, 1930.

*Blalock & Blalock,* for plaintiff in error.

*Q. L. Garrett, Herbert W. Wilson, Harry M. Wilson,* contra.

BELL, J.  Waycross Commercial Hotel Company brought suit against G. M. Tomberlin upon a subscription for stock in Waycross Commercial Hotel Company.  The suit was amended without objection.  The defendant filed a general demurrer to the petition, which the court overruled.  The defendant filed also an answer, to which the plaintiff demurred both generally and specially.  The court refused to allow two amendments to the answer, offered by the defendant, and then struck all portions of the answer except certain admissions as to the execution of the contract and as to the receipt of notice for attorney's fees.  After these rulings the court entered a judgment for the plaintiff for the amount sued for, and the defendant brought the case to this court.  The exceptions are to the overruling of the defendant's general demurrer to the petition, the refusal to allow the amendments to the answer, the striking of the answer, and the final judgment

The instrument sued on was dated May 17, 1927, and was in the form of a note and contract.  It was signed by the defendant and purported to be a subscription for one share of preferred stock and one share of common stock without par value in the "Waycross Hotel Company of Waycross, Georgia," a corporation to be formed under the laws of Georgia, the stipulated price being $101, and this being the amount sued for.  The price was payable in monthly installments and the final installment had matured before suit.  There was a stipulation that the stock should be retained and held as collateral security for the payment of the note, and should be delivered only upon full payment of the purchase-price.

The agreement contained no description of the proposed corporation beyond what has just been stated; was unconditional, and provided for the payment of attorney's fees in case of suit.  The original petition merely set out a copy of the contract and alleged the defendant's indebtedness and failure to pay, together with a

claim for attorney's fees. By amendment thereto it was alleged that Waycross Commercial Hotel Company obtained a charter from the superior court of Ware county on May 18, 1927, and immediately thereafter duly accepted the charter, adopted by-laws, and perfected corporate organization. The amendment further averred that in pursuance of the charter "the hotel to be built has been constructed in the city of Waycross, Ware county, Georgia, and is now in full operation."

The answer denied liability, upon the ground that the corporation was organized and the stock sold without compliance with the Georgia securities law. It was alleged that at the time of the taking of the subscription sued on neither the plaintiff corporation (then not in existence) nor the persons who proposed to form such corporation had filed with the securities commission of Georgia the statements required by law as a prerequisite to the sale of such stock, and that neither the corporation nor the persons proposing to form the same had obtained a license to sell the stock as provided by law. One of the amendments to the answer was as follows: "Defendant avers that prior to the time said corporation was formed the persons forming said corporation entered into a contract with one J. E. Cole for the sale of stock in said corporation, contracting with the said Cole to direct and manage the sale of said stock and financing of said hotel at and for a consideration of five per cent. of the gross sales of stock in said corporation, and the said Cole, in pursuance of said contract, did render the services contemplated by said contract and was paid by said corporation after its incorporation the sum of $2,800 for his services. . . Defendant avers that the stock-promotion scheme above described was a selling and dealing in securities within the meaning of the Georgia securities law, and that nobody engaged in or connected with the promotion scheme made any pretense of an effort to comply with said law; that the contract of purchase and sale of said stock is therefore void."

The other amendment offered by the defendant was as follows: "Defendant was induced to sign said stock subscription by W. D. O'Quinn and B. G. Parks, agents and solicitors of said plaintiff, and defendant avers that on or about the 27th day of May, 1927, he advised the said W. D. O'Quinn and B. G. Parks in person that he would not pay for said stock and that he rescinded the purchase thereof."

As stated above, the plaintiff demurred to the defendant's answer both generally and specially, but the court appears to have taken no account of the special demurrers, since his order striking the defensive portions of the answer recites that it was made "upon motion of the plaintiff's counsel."

■ The first contention made by the plaintiff in error is that the suit should have been dismissed on general demurrer, because the petition failed to show a compliance with the Georgia securities act before the sale of, or the taking of subscriptions for, the stock. It was not necessary for the petition to show affirmatively that the securities law had been complied with. In *Cassini* v. *Highlands Hotel Co.*, 37 *Ga. App.* 778 (142 S. E. 565), non-compliance was affirmatively disclosed by the allegations of the petition, and it was accordingly held that the general demurrer should have been sustained. The present case is controlled by *Suddath* v. *Blanchard*, 39 *Ga. App.* 262 (2) (146 S. E. 798), in which it was held that "if the transaction between the payee corporation and the subscriber who executed the note was one which the corporation should not have entered into without first complying with the Georgia securities law (Ga. L. 1920, p. 250), it will be presumed, in the absence of anything to show the contrary, that this law was complied with."

■ The stock subscription was not unenforceable because the corporation was not in existence at the time the agreement was executed. The corporation, after being duly formed and organized, could maintain in its own name an action upon the contract against the subscriber. *Branch* v. *Augusta Glass Works*, 95 *Ga.* 573 (3) (23 S. E. 128). The subscription was not void for uncertainty upon its face, nor, in view of the recital as to the subscription of others, which constituted a consideration for the subscription of the defendant, was it necessary for the plaintiff to make express allegation as to acceptance of the defendant's subscription by the corporation. *Georgia & Florida R. Co.* v. *Ayres*, 56 *Ga.* 230 (2) ; *Dotson* v. *Savannah Pure Food Co.*, 140 *Ga.* 161 (2) (78 S. E. 801) ; *Owenby* v. *Georgia Baptist Assembly*, 137 *Ga.* 698 (74 S. E. 56, Ann. Cas. 1913B, 238 ; 1 Thompson on Corporations (3d ed.), §§ 592, 652.

The petition set forth a cause of action as against the general demurrer.

■ The answer alleged that neither the plaintiff nor those repre-

senting it in the preorganization stage complied with the securities act before selling or taking subscription for the stock. As to the necessity for such compliance, we are of the opinion that the present case is controlled by the decision of the Supreme Court in *Felton* v. *Highlands Hotel Co.,* 165 *Ga.* 598 (2) (141 S. E. 793, 57 A. L. R. 987). Under the ruling made in that case, it is clear that the answer alleged such facts as would constitute a meritorious defense, unless it be that the defendant's right to assert the defense is lost by reason of his failure to rescind the contract within twelve months from the date thereof.

Section 29 of the securities act contains, among others, the following provision: "Every sale or contract of sale made by a dealer or his agent, or other person, coming within the provisions of this act, who has not first secured a license from the securities commission, or whose license has been revoked or has expired, shall be rescinded by the purchaser within one year, but not thereafter." Section 35 is as follows: "Every sale and contract of sale made in violation of any of the provisions of this act shall be void at the instance of the purchaser at any time within twelve (12) months from the date of such purchase, or contract of purchase; and the seller of the securities so sold in violation of any of the provisions of this act, and each and every solicitor, agent or broker, of or for such seller, who shall have knowingly performed any act or in any way furthered such sale, shall be jointly and severally liable, upon tender to the seller or in court of the securities sold, to the purchaser for the amount paid, together with his reasonable attorney's fees in any action brought to recover such amount."

The suit was not filed within twelve months after the subscription contract was entered into, and of course the defense made in the case comes too late if the limitation provided by sections 29 and 35 is applicable, and if the defendant has failed to show a timely rescission.

It is our opinion that such portions of these sections as provide that a rescission or repudiation must be made within twelve months were intended to state a period of limitation for affirmative actions by subscribers or purchasers, instituted for the purpose of rescinding the prohibited agreements or to recover money or other things of value paid or parted with in consideration thereof. The defendant in this case is not seeking a *rescission* of the contract,

but is disputing the right of the plaintiff to recover, because of a noncompliance with certain conditions which it was necessary to comply with before the contract would be enforceable as an obligation between the parties. The suit is upon an executory contract, and the failure to comply with the securities act is pleaded only as against the plaintiff's right to recover, and is thus asserted by way of defense only. *Lankford* v. *Peterson*, 21 *Ga. App.* 1 (3) (93 S. E. 499); *Heineman* v. *Newman*, 55 *Ga.* 262 (21 Am. R. 279); *Parrott* v. *Baker*, 82 *Ga.* 364 (2) (9 S. E. 1068); *Chenoweth* v. *Williams*, 39 *Ga. App.* 344 (1) (147 S. E. 180). In these circumstances, the twelve-months limitation period provided by sections 29 and 35 is, in our opinion, without any application whatsoever. Being of this view, we necessarily reach the conclusion that the answer set forth a valid defense. If the facts set forth in the defendant's answer are true, as alleged, the contract is unenforceable as a matter of law, and the plaintiff could not prove it to be otherwise by evidence of good faith or absence of actual fraud.

In the case of *Witt* v. *Trustees Loan & Savings Co.*, 33 *Ga. App.* 802 (127 S. E. 810), there may be an intimation that the defense should be made within twelve months. In that case, however, the answer was filed within less than twelve months from the date of the contract, and it was therefore unnecessary to decide what would be the rule where the defense was not made within such twelve-months period.

We speak of what the answer would have contained if the court had allowed the amendments. We think the amendments were proper and that they ought to have been allowed. While the second amendment with reference to rescission clearly failed to allege such a rescission as is contemplated by sections 29 and 35, the facts stated therein were pertinent to the defense made.

*Judgment reversed. Jenkins, P. J., concurs. Stephens, J., dissents.*

STEPHENS, J., dissenting. I can not concur in the conclusion reached by my colleagues that the provisions of sections 29 and 35 of the securities act of 1920 (Ga. L. 1920 p. 250), which provide that "every sale or contract of sale" made under the circumstances there mentioned "shall be void and may be rescinded by the purchaser within one year, but not thereafter," and that "every sale and contract of sale made in violation of any of the provisions of

this act shall be void at the instance of the purchaser at any time within twelve months from the date of such purchase, or contract of purchase," will not prevent a buyer or subscriber from later pleading a want of compliance with such act defensively to an action upon an executory sale or subscription contract. I am of the opinion that, under a proper construction of these sections of the act, the time limitation applies to *every* contract of sale, irrespective of whether the purchaser had "parted with money or other thing of value." Just what proceedings a purchaser who had executed and delivered his note for the subscription price of stock and had not received the stock would take to "rescind" or "void" the contract, and whatever practical difficulty may be in the way of his effecting a rescission or a voidance of the contract, is not material. Under the statute, as I construe it, the contract is valid and enforceable unless the purchaser, within a period of one year or twelve months after its execution, "rescinds," or "voids," the contract. It might be that the purchaser could evidence his intent to rescind the contract, or "void" it, by demanding of the seller the return of the note, and disclaiming all right and title to the stock.

The defendant's plea, in which he alleges that he within twelve months "advised" the agents and solicitors who had sold him the stock "that he would not pay for said stock and that he rescinded the purchase thereof" is insufficient to show any valid rescission of the contract, since it does not appear that the solicitors and agents who sold him the stock represented the seller as agents, and had authority from the seller to accept notice of the purchaser's intent to "rescind" or "void" the contract.

I therefore am of the opinion that the plea failed to set out a valid defense, and that it was properly stricken. For this reason I dissent from the judgment of reversal.